## IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

## AT MACON,

## JUNE TERM, 1859.

Present—JOSEPH H. LUMPKIN,
HENRY L. BENNING,      } Judges.
LINTON STEPHENS.

---

## HOWARD, et. al., *vs.* SNELLING & SNELLING.

1. One or more of several joint-tenants, or tenants in common, may sue separately in trover.
2. If the *cestui que trusts* are entitled to the *possession* of property under a trust deed, they may maintain trover against a stranger, to recover the property, and such recovery would be a protection to the defendants, against a suit brought by the trustee.
3. If two are sued in trover, and no conversion is proven against one of them, it is no ground for a non-suit, but the verdict should be framed in accordance with the testimony.

Trover and Nonsuit, in Stewart Superior Court. Before Judge KIDDOO, April Term, 1859.

This was an action of Trover, brought by Harman H. Howard and wife, and others, against John D. Snelling

and James W. Snelling, to recover certain negro slaves, under the following deed, to-wit:

This indenture, made this ninth day of August, in the year of our Lord one thousand eight hundred and nine, between Samuel Tompkins, of the county of Washington, and State of Georgia, of the one part, and Robert Rutherford, of the Town of Milledgeville, Baldwin county, and Franklin Rutherford, of Washington, both the latter of said State of Georgia, of the other part, *Witnesseth,* That for and in consideration of the trust and confidence reposed in the said Robert Rutherford and Franklin Rutherford, as well of the love and good will and affection which he hath for and toward the children of Polly Watts, otherwise Polly Tompkins, hath given and granted, and doth by these presents freely give and grant unto the said Robert Rutherford and Franklin Rutherford the following negroes, to-wit: Jack, February, Rhody, Stephen and Sarah; to have and to hold the aforesaid five negroes unto the said Robert Rutherford and Franklin Rutherford, upon trust. Nevertheless, that the said Robert Rutherford and Franklin Rutherford, or either of them, shall and do well, truly, and without partiality, divide and equally apportion the before mentioned negroes, together with their increase at the death of the said Samuel Tompkins, or within nine months thereafter, among all the children that may be born of the said Polly Watts, otherwise Polly Tompkins, at the end of said nine months, whether legitimate or illegitimate, and the said Samuel Tompkins, for the free and more clear disposal of the aforesaid five negroes, as well as their increase, doth covenant to and with the said Robert Rutherford and Franklin Rutherford, to and for the use of said children of the said Polly Watts, otherwise Polly Tompkins, of which children are now in life, John, Betsy, Samuel, and Polly, sons and daughters of the said Polly Watts, otherwise Polly Tompkins, shall have, hold and occupy, and enjoy,

provided, nevertheless, that the said Samuel Tompkins, and also the said Polly Watts, otherwise Polly Tompkins, shall continue to use, employ and receive all and singular the services of the said five negroes, and all and every of them, for and during the full end and term of the natural life of the said Samuel, and during the life, also, of the said Polly Watts, otherwise Polly Tompkins, without any manner of trouble from the said Robert Rutherford and the said Franklin Rutherford, or either of them ; and the said Samuel, for the more free and clear disposal of the said five negroes, unto the said children of the said Polly, and to their heirs and assigns, doth make and execute this reasonable instrument of writing, with the special reservation to the said Samuel and Polly, as herein expressed. In witness whereof the said Samuel Tompkins hath hereunto set his hand and affixed his seal, the day and year within written.

(Signed)          SAMUEL his ⋈ mark. TOMPKINS,

Signed, sealed and delivered in presence of
WM. RUTHERFORD,
JESSE ARMSTRONG, J. P.

ENDORSED.—"I do hereby acknowledge to have delivered the negroes herein mentioned to Robert Rutherford and Franklin Rutherford, for the use herein mentioned, with the reservation herein specified, this 9th day of August, 1809.

(Signed)          SAMUEL his ⋈ mark. TOMPKINS,"

WM. RUTHERFORD,
JESSE ARMSTRONG.

Recorded in the Clerk's office of the Superior Court of Washington county, 12th August, 1809.

It appeared from the evidence that Samuel Tompkins

died on the 23d February, 1856; that said Samuel and Polly Watts, otherwise Polly Tompkins, had born unto them eight children, to-wit: Samuel, Julia Dorotha, Elizabeth, John, Mary, William, Stephen and Nancy Ann; that Polly Watts, the mother, died in 1837; that Samuel and Julia Dorotha died before their mother, minors, and without having married, and leaving no descendants; that William, Stephen and John died before their father, leaving children, and that Harman H. Howard, one of the plaintiffs, was the administrator of William, and that John Smith, another of the plaintiffs, was the administrator on the estates of John and Stephen, deceased; that Elizabeth first married —— Williams, and afterwards a man by the name of Spear, and that she is now a widow, and one of the plaintiffs in this suit; that Mary married Harman H. Howard, also a plaintiff; that Nancy Ann is the wife of Joseph Miller, and that neither Miller nor his wife is joined as plaintiff in the action; that the negroes sued for were the children, or descendants, of Harriet, a woman who was the daughter of Rhody, one of the negroes mentioned in the deed of trust. It further appeared that James W. Snelling, one of the defendants, never had possession of but two of the slaves, to-wit: Harriet and her youngest child, and that Robert Rutherford, one of the trustees, was dead, and Franklin Rutherford, the other and surviving trustee, resided in the State of Alabama. The value of the negroes, and demand and refusal, were proved.

Plaintiff, having proved the above stated facts, closed, when defendant moved for a non-suit, on the following grounds:

1st. Because plaintiffs had no legal title to the negroes sued for and mentioned in their declaration.

2d. Because of the non-joinder of Mrs. Miller and her husband, as co-plaintiffs, who were joint tenants or owners of said negroes, with plaintiffs.

3d. Because there was a mis-joinder of defendants, it being shown that James W. Snelling never had possession of any of said negroes except two.

After argument the Court granted the motion and nonsuited plaintiff, to which decision plaintiffs excepted, and assign the same as error.

JOHNSON & SLOAN and B. H. WORRILL, for plaintiffs in error.

JONES & JONES, WIMBERLY and BEALL, contra.

By the Court.—LUMPKIN, J., delivering the opinion.

Was the Court right in granting a non-suit in this case? It was moved for on three grounds—1st, Because of the non-joinder as plaintiffs of all the parties interested in the property.

And this presents the question, whether one or more joint-tenants, or tenants in common, may sue separately in trover. In Starnes & Pearce, (6 Geo. Rep., 84,) it was decided that it might be done; and that no advantage could be taken of it on the trial. · When this objection was made, the case was on the appeal trial. We are inclined to think that such omission would not be good by plea in abatement, notwithstanding the dictum to the contrary, in the case referred to.

The second ground upon which this nonsuit was awarded is, that the plaintiffs had no legal title, in themselves, to the property.in dispute. The life estate reserved to Samuel Tompkins, and Polly, his wife, terminated in 1856. In nine months thereafter an equal division of the negroes given by the deed was to have been made. Robert Rutherford, one of the trustees, is dead; the other, Franklin Rutherford, resides in Alabama. Some of the Court think that the trust terminated at the time that the negroes were to have been divided; that the trust was

created for the benefit of after-born children, who were to be let in under the conveyance. All of us agree, that if this were not so, that the *cestui que trust* were entitled to the *possession* of the negroes, and could, therefore, maintain this action against a stranger, to recover the possession. The trust is nominal. The defendants themselves have sworn, in defence of a suit by the surviving trustee, against them, that he is no longer a trustee; and we think they were more than half right. He is aged, and infirm, and a non-resident. He had best make a formal surrender of his trust.

Would not a recovery by the plaintiffs protect the defendants? Suppose the trustee were to recover those negroes; it would be for the benefit of the plaintiffs, and solely for the purpose of dividing the negroes between them. And if it were shown that they had already recovered the property themselves, would not a court of equity interpose and enjoin the suit? Undoubtedly it would.

3dly. Ought a non-suit to have been granted on account of the misjoinder of the defendants?

It seems from the record that there was no proof authorizing a recovery against James Snelling. The testimony is, that he once held in his possession Harriet and her youngest child. There is no evidence that he converted them, nor was any demand made of him. Instead of non-suiting the case, then, it should have been submitted to the jury, that if they found that John Snelling had all the slaves sued for in his possession, at the time they were demanded, or that he had made *distribution* of them, in the language of the witness—and there is evidence from which it may be inferred that such was the fact—in that event, they might find damages against John Snelling, for all the slaves. If however, they found, from the proof, that two of the negroes, Harriet and her youngest child, were in the possession of James Snelling, and there was no proof of any con-

version by him, they should find generally for James Snelling, and a verdict against John Snelling for the rest of the negroes. In this way the verdict would cover all the issue, and be obnoxious to no legal objection..

Our judgment, therefore, is, that the non-suit be set aside and the case re-instated, and upon the next trial, unless the plaintiffs can prove a conversion by James Snelling, his name should be stricken from the writ.

Judgment reversed.